UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AMERICA MELO, CARLOS SILIE, FRANCISCA MONTAN, HAMLET MORALES MONTERO, JEHANNY VASQUEZ, JENNIFER BENCOSME, JONATHAN ALMONTE, LUISA HENRIQUEZ, RACHEL RODRIGUEZ, ROSANDRI DE LEON, RUBEN TOLENTINO, SANDRA INES TAVAREZ, VANNY PACHECO, and YERLIN MAZIER BILLINI,** | Civil Action No.: |
| Plaintiffs, | **COMPLAINT** |
| - against - | |
| **WASHINGTON HEIGHTS WIRELESS, INC.; FORDHAM WIRELESS PLAZA, INC.; MANHATTAN METRO WIRELESS, INC., MOBILE WEST, INC., SMART TALK WIRELESS, INC., BROADWAY METRO WIRELESS, INC., BURNSIDE METRO WIRELESS, INC., STP FULTON, INC., STP CONEY, INC., STP KNICKERBOCKER, INC., STP KNICKERBOCKER 2, INC., UNIVERSE WIRELESS, INC., METRO WIRELESS STADIUM, INC., NY METRO PARTNER, INC., collectively d/b/a METRO BY T-MOBILE f/k/a MetroPCS** and **ELLIOT DABAH,** an Individual, | |
| Defendants. | |

Plaintiffs America Melo, Carlos Silie, Francisca Montan, Hamlet Morales Montero, Jehanny Vasquez, Jennifer Bencosme, Jonathan Almonte, Luisa Henriquez, Rachel Rodriguez, Rosandri de Leon, Ruben Tolentino, Sandra Ines Tavarez, Vanny Pacheco and Yerlin Mazier Billini (collectively "plaintiffs") by their attorneys the Law Offices of Mitchell Schley, LLC,

complaining of defendants Washington Heights Wireless, Inc., Fordham Wireless Plaza, Inc., Manhattan Metro Wireless, Inc., Mobile West, Inc., Smart Talk Wireless, Inc., Broadway Metro Wireless, Inc., Burnside Metro Wireless, Inc., STP Fulton, Inc., STP Coney, Inc., STP Knickerbocker, Inc., STP Knickerbocker 2, Inc., Universe Wireless, Inc., Metro Wireless Stadium, Inc., NY Metro Partner, Inc., collectively d/b/a Metro by T-Mobile, f/k/a MetroPCS, and Elliot Dabah, an Individual, (all collectively "defendants" or "Metro"), allege as follows:

### NATURE OF THE ACTION

1.     This action is brought to recover unpaid overtime wages and all available relief pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL").  Defendants have also violated the New York Wage Theft Prevention Act ("WTPA") by failing to furnish its employees with mandated notices regarding the terms of their employment and the required weekly pay stub with each paycheck showing the regular hours worked, the overtime hours worked, and regular and overtime rates of pay.

2.     Defendants are cellular phone stores located in Manhattan, the Bronx and Brooklyn in New York City.

3.     Plaintiffs have been unlawfully deprived of overtime pay and minimum wage because of the employers' disregard of the requirements of federal and state labor laws.

4.     Plaintiffs seek unpaid minimum wages, overtime wages, liquidated damages, pre- and post-judgment interest, injunctive and declaratory relief against defendants' unlawful actions, and attorneys' fees and costs pursuant to the FLSA, NYLL and the WTPA.

## JURISDICTION

5.     This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

6.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## VENUE

7.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because a substantial part of the conduct alleged herein occurred in this judicial district and most defendants reside in this district.

## THE PARTIES

**Plaintiffs**

8.     Plaintiff America Melo is a resident of the Bronx, New York.

9.     America Melo was employed as a salesperson by Metro at the Mobile West, Inc. store located at 582 W. 207 St., New York, NY 10034 and the Burnside Metro Wireless, Inc. store located at 118 E. Burnside Ave., Bronx, NY 10453, from 2010 until December 2020.

10.     At all relevant times, America Melo was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

11.     At all relevant times, America Melo was an employee of defendants within the meaning of the FLSA and NYLL.

12.     Plaintiff Carlos Sillie is a resident of the Bronx, New York.

13.     Carlos Sillie was employed as a salesperson by Metro at the Washington Heights Wireless, Inc. store located at 1323 St. Nicholas Ave., New York, NY 10033 and the Manhattan

3

Metro Wireless, Inc., store located at 3421 Broadway, New York, NY 10031, from 2009 until March 2020.

14.     At all relevant times, Carlos Sillie was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

15.     At all relevant times, Carlos Sillie was an employee of defendants within the meaning of the FLSA and NYLL.

16.     Plaintiff Francisca Montan is a resident of the Bronx, New York.

17.     Francisca Montan was employed as a salesperson by Metro at the STP Coney, Inc. store located at 1612 Mermaid Ave., Brooklyn, NY 11224, the NY Metro Partner, Inc. store located at 2414 Mermaid Ave., Brooklyn, NY 11224 and the STP Fulton, Inc. store located at 1295 Fulton St., Brooklyn, NY 11216, from October 2018 until February 2021.

18.     At all relevant times, Francisca Montan was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

19.     At all relevant times, Francisca Montan was an employee of defendants within the meaning of the FLSA and NYLL.

20.     Plaintiff Hamlet Morales Montero is a resident of the Bronx, New York.

21.     Hamlet Morales Montero was employed as a salesperson by Metro at the STP Knickerbocker, Inc. store located at 244 Knickerbocker Ave., Brooklyn, NY 11237, the STP Knickerbocker 2, Inc., store located at 481 Knickerbocker Ave., Brooklyn, NY 11237 and the Broadway Metro Wireless, Inc., store located at 5585 Broadway, Bronx, NY 10463, from December 2017 until May 2021.

22.     At all relevant times, Hamlet Morales Montero was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

23.     At all relevant times, Hamlet Morales Montero was an employee of defendants within the meaning of the FLSA and NYLL.

24.     Plaintiff Jehanny Vasquez is a resident of Manhattan, New York.

25.     Jehanny Vasquez was employed as a salesperson by Metro at the Mobile West, Inc. store located at 582 W. 207 St., New York, NY 10033, from 2013 until February 2021.

26.     At all relevant times, Jehanny Vasquez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

27.     At all relevant times, Jehanny Vasquez was an employee of defendants within the meaning of the FLSA and NYLL.

28.     Plaintiff Jennifer Bencosme is a resident of Brooklyn, New York.

29.     Jennifer Bencosme was employed as a salesperson by Metro at the STP Knickerbocker, Inc. store located at 244 Knickerbocker Ave., Brooklyn, NY 11237; the STP Knickerbocker 2, Inc., store located at 481 Knickerbocker Ave., Brooklyn, NY 11237, the Broadway Metro Wireless, Inc., store located at 5585 Broadway, Bronx, NY 10463 and the NY Metro Partner, Inc. store located at 2414 Mermaid Ave., Brooklyn, NY 11224, from 2012 until December 2020.

30.     At all relevant times, Jennifer Bencosme was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

31.     At all relevant times, Jennifer Bencosme was an employee of defendants within the meaning of the FLSA and NYLL.

32.     Plaintiff Jonathan Almonte is a resident of the Bronx, New York.

33.     Jonathan Almonte was employed as a salesperson by Metro at the Smart Talk Wireless, Inc. store located at 178 Dyckman St., New York, NY 10440, from 2016 until 2017.

34.     At all relevant times, Jonathan Almonte was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

35.     At all relevant times, Jonathan Almonte was an employee of defendants within the meaning of the FLSA and NYLL.

36.     Plaintiff Luisa Henriquez is a resident of the Bronx, New York.

37.     Luisa Henriquez was employed as a salesperson by Metro at the Washington Heights Wireless, Inc. store located at 1323 St. Nicholas Ave, New York, NY 10033, the Fordham Wireless Plaza, Inc. store located at 42 W. Fordham Road, Bronx, NY 10468 and the Smart Talk Wireless, Inc. store located at 178 Dyckman St., New York, NY 10040, from 2009 until December 2020.

38.     At all relevant times, Luisa Henriquez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

39.     At all relevant times, Luisa Henriquez was an employee of defendants within the meaning of the FLSA and NYLL.

40.     Plaintiff Rachel Rodriguez is a resident of the Bronx, New York.

41.     Rachel Rodriguez was employed as a salesperson by Metro at the Smart Talk Wireless, Inc., store located at 178 Dyckman St., New York, NY 10040 and the Universe Wireless, Inc. store located at 1981 Dr. Martin L King Jr. Blvd., Bronx, NY 10453, from 2014 until May 2021.

42.     At all relevant times, Rachel Rodriguez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

43.     At all relevant times Rachel Rodriguez was an employee of defendants within the meaning of the FLSA and NYLL.

44.     Plaintiff Rosandri de León is a resident of the Bronx, New York.

45.     Rosandri de León is employed as a salesperson by Metro at the Washington Heights Wireless, Inc. store located at 1323 St. Nicholas Ave., New York, NY 10033, the Broadway Metro Wireless, Inc. store located at 5585 Broadway, Bronx, NY 10463 and the Burnside Metro Wireless, Inc. store located at 118 E. Burnside Ave., Bronx, NY 10453, from 2007 until the present date.

46.     At all relevant times, Rosandri de León was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

47.     At all relevant times, Rosandri de León was an employee of defendants within the meaning of the FLSA and NYLL.

48.     Plaintiff Ruben Tolentino is a resident of the Bronx, New York.

49.     Ruben Tolentino was employed as a salesperson by Metro at the Mobile West, Inc. store located at 582 W. 207 St. New York, NY 10034 and the Burnside Metro Wireless, Inc. store located at 118 E. Burnside Ave., Bronx, NY 10453, from 2011 until April 2021.

50.     At all relevant times, Ruben Tolentino was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

51.     At all relevant times Ruben Tolentino was an employee of defendants within the meaning of the FLSA and NYLL.

52.     Plaintiff Sandra Tavarez is a resident of the Bronx, New York.

53.     Sandra Tavarez was employed as a salesperson by Metro at the Washington Heights Wireless, Inc. store located at 1323 St. Nicholas Ave., New York, NY 10033, the Broadway Metro Wireless, Inc. store located at 5585 Broadway, Bronx, NY 10463, the Manhattan Metro Wireless, Inc., store located at 3421 Broadway, New York, NY 10031 and the Metro Wireless Stadium, Inc., store located at 81 E. 161st St., Bronx, NY 10451, from March 2009 until December 2020.

54.     At all relevant times, Sandra Tavarez was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

55.     At all relevant times Sandra Tavarez was an employee of defendants within the meaning of the FLSA and NYLL.

56.     Plaintiff Vanny Pacheco is a resident of the Bronx, New York.

57.     Vanny Pacheco was employed as a salesperson by Metro at the Mobile West, Inc. store located at 582 W. 207 St., New York, NY 10034, from July 2016 until December 2020.

58.     At all relevant times, Vanny Pacheco was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

59.     At all relevant times Vanny Pacheco was an employee of defendants within the meaning of the FLSA and NYLL.

60.     Plaintiff Yerlin Maziel Villin is a resident of the Bronx, New York.

61.     Yerlin Maziel Villin was employed as a salesperson by Metro at the Mobile West, Inc. store located at 582 W. 207 St., New York, NY 10034, the Smart Talk Wireless, Inc. store located at 178 Dyckman St., New York, NY 10040 and the Broadway Metro Wireless, Inc. store located at 5585 Broadway, Bronx, NY 10463, from March 2018 until April 2019.

62.     At all relevant times, Yerlin Maziel Villin was an employee engaged in commerce or the production of goods for commerce on behalf of defendants within the meaning of the FLSA.

63.     At all relevant times Yerlin Maziel Villin was an employee of defendants within the meaning of the FLSA and NYLL.

**Defendants**

64.     Defendants Washington Heights Wireless, Inc., Fordham Wireless Plaza, Inc., Manhattan Metro Wireless, Inc., Mobile West, Inc., Smart Talk Wireless, Inc., Broadway Metro Wireless, Inc., Burnside Metro Wireless, Inc., STP Fulton, Inc., STP Coney, Inc., STP Knickerbocker, Inc., STP Knickerbocker 2, Inc., Universe Wireless, Inc., Metro Wireless Stadium, Inc. and NY Metro Partner, Inc., do business as Metro by T-Mobile and formerly did business as MetroPCS.

65.     Washington Heights Wireless, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

66.     Fordham Wireless Plaza, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

67.     Manhattan Metro Wireless, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

68.     Mobile West, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

69.     Smart Talk Wireless, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

70.     Broadway Metro Wireless, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

71.     Burnside Metro Wireless, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

72.     STP Fulton, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

73.     STP Coney, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

74.     STP Knickerbocker, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

75.     STP Knickerbocker 2, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

76.     Universe Wireless, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

77.     Metro Wireless Stadium, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

78.     NY Metro Partner, Inc. has been at all relevant times an employer engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and a covered employer under the FLSA and NYLL.

79.     Defendant Elliot Dabah ("Dabah") is the sole owner of Metro.

80.     Dabah is an owner of Metro.

81.     Dabah is an officer of Metro.

82.     Dabah is a manager of Metro.

83.     Dabah is sued individually in his capacity as an owner, officer and/or manager of Metro.

84.     At all relevant times, Dabah has been plaintiffs' employer under the FLSA and NYLL because he exercised sufficient managerial and operational control and policy-making authority over Metro' operations and established the sales person's terms and conditions of employment.

85.     Dabah has, and had, the power to, and did, hire and fire employees, establish and implement pay practices, work assignments, scheduling, control labor relations and personnel policies and practices, determine wages, and maintain time and payroll records.

86.     As an owner, officer and/or manager of Metro, Dabah acted directly or indirectly in the interest of Metro in relation to its employees.

87.     Dabah is personally and jointly and severally liable for the violations of the FLSA and NYLL by Metro.

88.     Dabah is the registered agent for service of process for the defendants.

**Single Employer Allegations**

89.     The Metro defendants, have common ownership, unified operation and/or control, and are related and have common business purpose and constitute an enterprise within the meaning of the FLSA and NYLL.

90.     The Metro defendants constitute a single employer within the meaning of the FLSA and NYLL, because they have an interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

**(1) With regard to interrelation of operations, the following facts support this allegation:**

91.     The Metro defendants have and had common employees, who worked as salespersons at more than one of the Metro store locations.

92.     For example, plaintiff Luisa Henriquez, worked at the Washington Heights Wireless, Inc., store the Fordham Wireless Plaza, Inc. store and the Smart Talk Wireless, Inc. store from 2009 until December 2020.

93.     The Metro defendants have common management, among others, Elliot Dabah.

94.     The Metro defendants share the same suppliers and support staff.

95.     The Metro defendants centrally process its payroll for its stores.

96.     The Metro defendants centrally maintain its payroll and personnel records.

97.     The Metro defendants' payroll is processed and maintained by Anthony Filingeri who is located in Fort Lee, New Jersey.

**(2) With regard to centralized control of their labor relations, the following facts support this allegation:**

98.     The Metro defendants have common management, who set the same terms and conditions of employment and labor relations policies and procedures for their employees.

99.     The Metro defendants have the same owner, Elliot Dabah.

100.    Dabah and his agents regularly visit each store to oversee operations.

101.    Dabah hires, fires, disciplines, sets schedules, assigns work, determines employee pay and maintains payroll records for employees at the Metro defendants' stores.

102.    The Metro defendants use the same method to pay employees, namely, by a combination of check and cash.

103.    The Metro defendants paid plaintiffs with a check each week and with an additional payment for commission in cash at the end of each month.

**(3) With regard to common management, the following facts support this allegation:**

104.    The Metro defendants have common management, among others, Elliot Dabah.

**(4) With regard to common ownership and financial control, the following facts support this allegation:**

105.    Dabah serves as the owner and manager of the Metro defendants.

106.    Dabah is an owner of the Metro defendant stores.

107.    Dabah utilizes the same accountant to prepare the books and records, financial statements and tax returns for the Metro defendant stores.

## FACTUAL ALLEGATIONS

108.     T-Mobile provides wireless voice, messaging and data services in the United States. In 2013, T-Mobile merged with MetroPCS Communications, Inc. and branded itself as MetroPCS which focuses on consumers interested in lower-priced service without the requirement of a long-term contract like Verizon or AT&T. In 2018, the brand name was changed to Metro by T-Mobile.

109.     MetroPCS New York, LLC is a subsidiary of T-Mobile that manages and contracts with entities that operate Metro stores in New York City, including those of defendants.

110.     Throughout their employment, plaintiffs' primary duty was to sell cell phones, accessories and monthly cell phone plans.

111.     Throughout their employment plaintiffs spent more than fifty percent of their time at work selling cell phones, accessories and monthly cell phone plans.

112.     At all relevant times, Metro has been open for business seven days a week.

113.     Before 2018, defendants did not record the times plaintiffs began and ended work. Beginning in 2018, defendants recorded the times each plaintiff arrived at work, but did not have employees record the times they left work.

114.     At all relevant times, plaintiffs consistently worked over 40 hours a week, typically between 50 and 60 hours per week.

115.     Throughout plaintiffs' employment, they regularly worked six days a week from when the store opened at 10:00 a.m. until after the store closed at 7:30 p.m. and oftentimes stayed later to finish a sale and close up the store.

116.     Plaintiffs did not receive a regular period of time for a lunch break and instead took a few minutes to eat lunch when they had the opportunity while they were working.

117.    Plaintiffs were not told by defendants what they were paid per hour, but were regularly paid less than the applicable state and federal minimum wage.

118.    Plaintiffs received weekly paychecks and were paid a monthly commission which was paid in cash.

119.    Plaintiffs monthly commission depended on how many cell phone plans and accessories they sold.

120.    Based on the hours each plaintiff worked each week, the weekly pay they received without commission did not provide employees with the minimum wage due by the FLSA.

121.    Based on the hours each plaintiff worked each week, the weekly pay they received without commission did not provide employees with the minimum wage due by the NYLL.

122.    Based on the hours each plaintiff worked each week, plaintiffs did not receive the minimum wage even with the addition from the monthly commission payments.

123.    Plaintiffs were entitled to be paid state and federal minimum wage.

124.    Plaintiffs were entitled to be paid at a rate of one-and-one-half (1 ½) times their hourly rate for rate for hours worked in excess of 40 per workweek.

125.    Defendants failed to pay plaintiffs at the rate of one-and-one-half (1 ½) times their hourly rate for rate for hours worked in excess of 40 per workweek.

126.    Plaintiffs were not exempt from overtime pay pursuant to the FLSA.

127.    Plaintiffs were not exempt from overtime pay pursuant to the NYLL.

128.    Defendants did not pay plaintiffs New York minimum wage of $15.00 per hour, or New York overtime rate of $22.50 per hour during 2021. For example, for the pay period of January 17, 2021 through January 23, 2021, plaintiffs were not paid at state or federal minimum

wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

129.    Defendants did not pay plaintiffs New York minimum wage of $15.00 per hour, or New York overtime rate of $22.50 per hour during 2020. For example, for the pay period of February 3, 2020 through February 9, 2020, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

130.    Defendants did not pay plaintiffs New York minimum wage of $15.00 per hour, or New York overtime rate of $22.50 per hour during 2019. For example, for the pay period of April 29, 2019 through May 5, 2019, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

131.    During 2016, 2017, 2018, 2019, 2020 and 2021, the check pay stubs of the plaintiffs for most pay periods listed fewer hours than the plaintiffs actually worked that week.

132.    For example, Rosandri de León worked more than 40 hours during the week of January 17, 2021, but she worked approximately 60 hours that week.

133.    Rosandri de León's pay stub issued by defendants did not list her total hours worked or her hourly rate for the week of January 17, 2021 through January 23, 2021.

134.    Defendants paid Rosandri de León a total of $260.00 for the week of January 17, 2021 through January 23, 2021.

135.    Rosandri de León's regular hourly rate should have been at least the New York minimum wage, which was $15.00 for the week of January 17, 2021 through January 23, 2021.

136.    Thus, that week, defendants owed Rosandri de León $600.00 in base pay and $450.00 in overtime pay for a total of $1050.00, but she was only paid $260.00 that week.

137.    For example, Rachel Rodriguez was scheduled to work and worked 60 hours during the week of February 3, 2020 through February 9, 2020.

138.    Rachel Rodriguez's pay stub issued by defendants did not list her total hours worked or her hourly rate for the week of February 3, 2020 through February 9, 2020.

139.    Defendants paid Rachel Rodriguez a total of $260.00 for the week of February 3, 2020 through February 9, 2020.

140.    Rachel Rodriguez's regular hourly rate should have been at least the New York minimum wage, which was $15.00 for the week of February 3, 2020 through February 9, 2020.

141.    Thus, that week, defendants owed Rachel Rodriguez $600.00 in base pay and $450.00 in overtime pay for a total of $1050.00, but she was only paid $260.00 that week.

142.    For example, America Melo, Hamlet Montero, Luisa Henriquez, Ruben Tolentino and Vanny Pacheco all worked more than 40 hours during the week of April 29, 2019, as sales persons in the store.

143.    Vanny Pacheco was scheduled to work and worked 60 hours during the week of April 29, 2019, through May 5, 2019, as a salesperson.

144.    Vanny Pacheco's Employee pay stub issued by defendants did not list her total hours worked for the week of April 29, 2019 through May 5, 2019.

145.    Vanny Pacheco's pay stub did not list her hourly rate.

146.    Defendants paid Vanny Pacheco, a total of $260.00 for the week of April 29, 2019 through May 5, 2019.

147.    Vanny Pacheco's regular hourly rate should have been at least the New York minimum wage, which was $15.00 for the week of April 29, 2019 through May 5, 2019.

148.    Thus, that week, defendants owed Vanny Pacheco $600.00 in base pay and $450.00 in overtime pay for a total of $1050.00, but she was only paid $260.00 that week.

149.    Most, if not all, of the pay stubs issued to Vanny Pacheco listed her total hours worked per week as between 22 hours and 32 hours. Many of the pay stubs issued to her did not list her total hours worked per week.

150.    Vanny Pacheco worked between 50 and 60 hours every workweek.

151.    By way of example, Jennifer Bencosme worked 60 hours during the week of May 6, 2019, through May 12, 2019. However, Jennifer Bencosme's employee pay stub falsely states that she worked 32 hours at a rate of $15.00 per hour.

152.    Defendants did not pay plaintiffs state minimum wage of $13.50 per hour, or state overtime rate of $19.50 per hour during 2018. For example, for the pay period of May 21, 2018, through May 27, 2018, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

153.    Even when accounting for Jennifer Bencosme's commission amounts, the amount she was paid still does not amount to his minimum wage or overtime that she was owed.

154.    By way of example, America Melo worked approximately 60 hours during the week of May 21, 2018 through May 27, 2018. However, America Melo's employee pay stub falsely states that he worked 36.93 hours at a rate of $13.00 per hour.

155.    Defendants did not pay plaintiffs state minimum wage of $12.00 per hour, or state overtime rate of $18.00 per hour during 2017. For example, for the pay period of December 25,

2017 through December 31, 2017, employed plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

156.     By way of example, Carlos Silie typically worked 55 to 60 hours per week in 2017. However, for instance, Carlos Sile's employee pay stub for the pay period of December 25, 2017 through December 31, 2017, does not specify an hourly rate or a number of hours and only contains a total gross payment in the amount of $325.00.

157.     Defendants did not pay plaintiffs state minimum wage of $10.50 per hour, or state overtime rate of $15.75 per hour during 2016. For example, for the pay period of May 11, 2016, through May 17, 2016, plaintiffs were not paid at state or federal minimum wage rate, nor were plaintiffs paid at time and one-half their hourly rate for hours worked in excess of 40 per workweek.

158.     By way of example, Sandra Tavarez typically worked 55 to 60 hours per week in 2016. Sandra Tavarez's 2016 employee pay stub for the pay period of May 11, 2016 through May 17, 2016, does not specify an hourly rate or a number of hours. It only contains a total gross payment in the amount of $350.00.

159.     By way of example, in 2016, 2017, 2018 and 2019, plaintiffs often worked between 50 to 60 hours a week and were often given a paycheck of $260.00 to $400.00 for that entire week's work.

160.     Defendants failed to post, in a conspicuous place, pursuant to FLSA, 29 U.S.C. § 207, *et seq*. and 29 U.S.C. § 516 *et. seq.*, a "Fair Labor Standards Act Poster (Minimum Wage Poster)," setting forth the federal minimum wage and overtime requirements, in English and in Spanish.

161.     Defendants failed to post, in a conspicuous place, pursuant to New York Labor Law § 190, *et seq.*, and 12 NYCRR 142-2.8 a "New York Labor Law (Minimum Wage Poster)," setting forth the state minimum wage and overtime requirements in English and in Spanish.

162.     At all relevant times, defendants willfully disregarded and purposely evaded record-keeping requirements by neglecting to maintain accurate and complete time records and payroll records.

163.     At all relevant times, defendants provided some plaintiffs with pay stubs which contained false hours worked per week.

164.     The foregoing practices by defendants were done willfully to disguise the actual number of hours plaintiffs worked and to avoid paying plaintiffs properly for all hours worked and for overtime pay due.

165.     At all relevant times, defendants failed to pay plaintiffs federal minimum wage in each and every weekly pay period they worked at Metro.

166.     At all relevant times, defendants failed to pay plaintiffs New York minimum wage in each and every weekly pay period they worked at Metro.

## COUNT I
### (Fair Labor Standards Act - Minimum Wage)

167.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

168.     Defendants were required to pay plaintiffs federal minimum wage for all hours of worked.

169.     Defendants have failed to pay plaintiffs the federal minimum hourly wages to which they are entitled under the FLSA.

170. Defendants were aware or should have been aware that the practices described in this Count were unlawful and defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs.

171. Defendants' violations of the FLSA have been willful and, therefore, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. § 255(a). In this regard, defendants had no reasonable basis to disregard its elementary obligation to pay its employees the basic minimum wage and overtime pay.

172. As a result of defendants' willful violations of the FLSA, plaintiffs have suffered damages by being denied minimum wage in accordance with the FLSA and are entitled to recovery of such amounts, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### (Fair Labor Standards Act - Unpaid Overtime)

173. Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

174. Defendants are required to pay plaintiffs one-and-one-half (1½) times the regular rate of pay for all hours they worked in excess of 40 in a workweek pursuant to the overtime wage provisions of the FLSA, 29 U.S.C. § 207, *et seq.*

175. Defendants have failed to pay plaintiffs the overtime wages to which they are entitled under the FLSA, even though plaintiffs have regularly worked more than 40 hours per workweek.

176. Defendants were aware or should have been aware that the practices described in this Count were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of plaintiffs.

177.    Defendants' violations of the FLSA have been willful and, therefore, a three-year statute of limitations applies pursuant to the FLSA, 29 U.S.C. § 255(a). In this regard, defendants had no reasonable basis to disregard its elementary obligation to pay its employees the basic minimum wage and overtime pay.

178.    As a result of defendants' willful violations of the FLSA, plaintiffs have suffered damages by being denied overtime pay in accordance with the FLSA and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## COUNT III
### (New York Labor Law – Unpaid Minimum Wage)

179.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

180.    Defendants were required to pay plaintiffs New York minimum wage for all hours worked.

181.    Defendants failed to pay plaintiffs the minimum hourly wages to which they are entitled under the NYLL.

182.    Defendants were aware or should have been aware that the practices described in this Count were unlawful and have not made a good faith effort to comply with the NYLL with respect to the compensation of plaintiffs.

183.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs minimum hourly wages, and defendants are liable for up to six years of unpaid wages pursuant to NYLL§ 663(3).

184.    As a result of defendants' violations of the NYLL, plaintiffs are entitled to recover their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest, pursuant to NYLL § 198(1-a).

## COUNT IV
### (New York Labor Law - Unpaid Overtime)

185.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

186.    Under the NYLL, defendants are required to pay plaintiffs one-and-one-half (1 ½) times the regular rate of pay for all hours they worked in excess of 40 hours in a workweek.

187.    Plaintiffs have regularly worked more than 40 hours per week.

188.    Defendants have failed to pay plaintiffs the overtime wages to which they are entitled under the NYLL.

189.    Defendants were aware or should have been aware that the practices described in this Count were unlawful and have not made a good faith effort to comply with the NYLL with respect to the compensation of plaintiffs.

190.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay plaintiffs overtime wages, and defendants are liable for up to six years of unpaid wages pursuant to NYLL § 663(3).

191.    Due to defendants' willful violations of the NYLL, plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest pursuant to NYLL § 198(1-a).

## COUNT V
### (New York Labor Law – Wage Theft Prevention Act)
### Violation of Notice Requirements

192.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

193.    Defendants violated NYLL § 195(1) by failing to furnish plaintiffs and the other non-exempt employees, at the time of hiring, with a notice in English and in the language identified by each employee as the primary language of such employee, containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

194.    Due to defendants' violation of NYLL § 195(1), plaintiffs are entitled to recover from defendants liquidated damages of $50.00 per work day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees and costs of the action, pursuant to the NYLL § 198(1-b).

**COUNT VI**
**(New York Labor Law – Wage Theft Prevention Act)**
**Violation of Wage Statement Requirements**

195.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

196.    Defendants violated NYLL § 195(3) by failing to furnish plaintiffs with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

197.    Due to defendants' violation of NYLL § 195(3), plaintiffs are entitled to recover from the defendants liquidated damages of $250 per work day that the violation occurred, up to a maximum of $5,000, reasonable attorney's fees and costs of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter a judgment:

a.      declaring that defendants have violated the minimum wage provisions of the FLSA and NYLL;

b.      declaring that defendants have violated the overtime provisions of the FLSA and NYLL;

c.      declaring that defendants' violations of the FLSA and NYLL were willful;

d.      awarding plaintiffs damages for unpaid overtime compensation and unpaid wages under the FLSA and NYLL;

e.      awarding plaintiffs liquidated damages under the FLSA and NYLL;

f.      awarding plaintiffs pre- and post-judgment interest under the FLSA and NYLL;

g.      awarding plaintiffs liquidated damages as a result of defendants' failure to furnish wage statements with each wage payment and the required notice at the time of hiring pursuant to the NYLL;

h.      awarding plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and NYLL, as permitted; and

i.      awarding such other and further relief as the Court deems just and proper.

**Law Offices of Mitchell Schley, LLC**

By: _/s/ Mitchell Schley_____
Mitchell Schley
197 Route 18, Suite 3000
East Brunswick, NJ 08816
(732) 325-0318
mschley@schleylaw.com
*Attorneys for Plaintiffs*

Dated:  October 8, 2021